**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WILLIAM RUBENSTAHL, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PHILIP MORRIS INTERNATIONAL INC., et. al., <br><br> Defendants. | Civil Action No. 17-13504 (ES) (MAH) <br><br> **MEMORANDUM OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is Plaintiff Union Asset Management Holding AG's ("Union") uncontested motion to be appointed lead plaintiff and have its lead counsel and liaison counsel approved under the Private Securities Litigation Reform Act ("PSLRA"). (D.E. No. 7). The Court has reviewed the relevant submissions and decides this matter without oral argument. *See* Fed. R. Civ. P. 78. For the reasons below, Union's motion is GRANTED.

*Background.* As the court writes primarily for the parties, only a brief procedural history is provided. Plaintiff William Rubenstahl filed this action on December 21, 2017, alleging that Defendants Philip Morris International Inc. ("Philip Morris"), Andre Calantzopoulis, and Jacek Olczak (together "Defendants") violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), injuring Plaintiff and others similarly situated. (*See generally* D.E. No. 1). More specifically, the Complaint alleges that (i) Defendants made false or misleading statements regarding Philip Morris' clinical testing of its reduced-risk products; (ii)

these false or misleading statements caused artificially inflated prices of Philip Morris securities; and (iii) putative class members, who purchased Philip Morris securities at the artificially inflated prices, were damaged upon revelation of the false or misleading statements. (*Id.* at ¶¶ 6, 15, 22 & 28).

On February 20, 2018, Union submitted the instant motion. (D.E. No. 7). Plaintiffs William Rubenstahl and Guodong Chen also filed motions to be appointed lead plaintiff (D.E. Nos. 5 & 6), but they withdrew those motions (D.E. Nos. 9 & 10) after Union filed its motion. On July 3, 2018, this Court directed Union to submit a supplemental brief to address deficiencies in its motion. (D.E. No. 20). Union submitted that supplemental brief (D.E. No. 21), as well as a copy of the retainer agreement for *in camera* inspection.

***Legal Standard.*** In a non-class action context, individual parties may select their counsel, negotiate retainer agreements, monitor counsel performance, and communicate with counsel on any concerns. *In re Cendant*, 264 F.3d 201, 254 (3d Cir. 2001). These liberties confer upon individual parties the power to (i) "choose lawyers with whom they are comfortable and in whose ability and integrity they have confidence;" (ii) "craft fee agreements . . . that work to align their lawyers' economic interests with their own;" and (iii) "police their lawyers' conduct [to] prevent shirking." *Id.* In a class action context, however, this power dwindles as counsel-class communications become unwieldy and the economic interests of the class and its counsel diverge. *See id.* at 254-55. Thus, there is "reason to fear that class counsel will be highly imperfect agents for the class." *Id.* at 255.

The PSLRA addresses this concern through two interrelated mechanisms. *See* 15 U.S.C. § 78u-4(a)(3); *Cendant*, 264 F.3d at 261-62. First, the PSLRA provides a process for choosing a *single*, most adequate "lead plaintiff" who will represent class interests, select qualified lead counsel for the class, and monitor lead counsel's performance. *See* 15 U.S.C. § 78u-4(a)(3);

*Cendant*, 264 F.3d at 261-62. Second, the PSLRA conditions the appointment of lead counsel on district court approval as a safeguard to ensure that lead counsel is qualified and that lead plaintiff discharged its duty of negotiating a reasonable retainer agreement. *See* 15 U.S.C. § 78u-4(a)(3); *Cendant*, 264 F.3d at 261-62. Regarding lead plaintiff selection, the PSLRA assumes that the "plaintiff or group [who] will most adequately represent class members' interests" is the one with "the largest financial stake in the outcome of an action," as that plaintiff or group possesses "the greatest economic incentive to monitor class counsel's performance effectively." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Cendant*, 264 F.3d at 261-62. Ideally, this assumption results in selecting an institutional investor as lead plaintiff. *See Cendant*, 264 F.3d at 261-62. Such investors are "experienced and sophisticated consumers of legal services," and district courts can afford them some deference when reviewing their choices of counsel and corresponding retainer agreements. *See id.* at 261-62, 274.

"District courts have an obligation to review applications for the appointment of lead plaintiff and to appoint as lead plaintiff the member or members of the purported plaintiff class who are 'most capable of adequately representing the interests of the class members,'" even where the application is unopposed. *Lewis v. Lipocine Inc.*, No. 16-4009, 2016 WL 7042075, at *3 (D.N.J. Dec. 2, 2016) (cleaned up). A district court considering a motion to appoint lead plaintiff first identifies "the movant with 'the largest financial interest in the relief sought by the class.'" *Cendant*, 264 F.3d at 262 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). There is no fixed method of identifying this movant. *See id.* But the Third Circuit has implicitly endorsed the analysis in *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997), which considers, among other things, (i) the number of shares purchased by movant during the putative class period; (ii) the total net funds expended by the

plaintiffs during the period; and (iii) the approximate losses suffered by the plaintiffs. *See Cendant*, 264 F.3d at 262.

Next, the district court determines if the movant with the largest interest "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). The Third Circuit has clarified that the district court's inquiry at this step is limited to determining whether the movant has stated a *prima facie* case of typicality and adequacy. *Cendant*, 264 F.3d at 263. Courts are to employ traditional Rule 23 principles. *Id.* at 264-65. Therefore, for typicality, the district court considers whether the movant's "circumstances . . . 'are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based.'" *Id.* at 265 (quoting *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988)) (alterations in original). And for adequacy, the district court considers whether the movant "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's claims] and those asserted on behalf of the class." *Id.* (citing *Hassine*, 846 F.2d at 177) (alterations in original) (internal quotations removed). In addition, the Third Circuit has promulgated two more factors for assessing adequacy. *See id.* First, the district court should consider the movant's "willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel." *Id.* at 266. Second, if the movant is a group of persons rather than an individual or business entity, the district court should consider whether "the way in which [the] group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff. . . ." *Id.*

If the movant with the largest financial interest in the relief does not demonstrate the requisite typicality and adequacy, then the district court identifies the movant with the next

largest interest, and repeats the analysis until a presumptive lead plaintiff is identified. *Id.* at 267. Once the district court identifies a presumptive lead plaintiff, other class members may rebut the presumption by proving that the lead plaintiff will not do a "fair and adequate job." *Id.* at 268; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If a class member successfully rebuts the presumption, then the district court identifies the movant with the next largest interest, and repeats the analysis until a lead plaintiff is selected. *Cendant*, 264 F.3d at 268.

Finally, once the district court appoints a lead plaintiff, the lead plaintiff selects and retains counsel—subject to the court's approval—to represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(v). The PSLRA creates "a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention," but the district court nevertheless must consider "whether the lead plaintiff's selection and agreement with counsel are reasonable on their own terms." *Cendant*, 264 F.3d at 276. At the heart of this inquiry is "whether the lead plaintiff's choices were the result of a good faith selection and negotiation process and were arrived at via meaningful arms-length bargaining." *Id.*; *see also In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 223 (D.N.J. 1999) ("Not only should the proposed counsel fees be the result of hard-bargaining, but the initial selection of counsel should be the result of independent decision-making by the lead plaintiff."). Among the factors a district court should consider are

> (1) the quantum of legal experience and sophistication possessed by the lead plaintiff; (2) the manner in which the lead plaintiff chose what law firms to consider; (3) the process by which the lead plaintiff selected its final choice; (4) the qualifications and experience of counsel selected by the lead plaintiff; and (5) the evidence that the retainer agreement negotiated by the lead plaintiff was (or was not) the product of serious negotiations between the lead plaintiff and the prospective lead counsel.

*Cendant*, 264 F.3d at 276. A court should interfere with lead plaintiff's selection of counsel and their retainer only as necessary to protect the interests of the class. *Id.* at 274.

*Analysis.* The Court concludes that Union is the class member "most capable of adequately representing the interests of the class members," and will accordingly appoint Union lead plaintiff. *See* Lewis, 2016 WL 7042075, at *3.

First, the Court finds that Union is "the movant with 'the largest financial interest in the relief sought by the class.'" *See Cendant*, 264 F.3d at 262 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). Union purchased 1,375,516 Philip Morris shares during the putative class period, expended $162,356,749 in doing so, and suffered roughly $6,450,000 in losses in connection with the transactions. (*See* D.E. No. 7-1 at 5-6). Each of the *Lax* factors fall squarely in Union's favor, as these numbers dwarf those provided by Plaintiffs William Rubenstahl and Guodong Chen in their withdrawn motions to be appointed lead plaintiff. *See Cendant*, 264 F.3d at 262; (*Compare* D.E. No. 7-1 at 5-6, *with* D.E. No. 5-2 at 5, *and* D.E. No. 6-1 at 6).

Next, the Court finds that Union has shown a *prima facie* case of typicality and adequacy, and therefore "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *Cendant*, 264 F.3d at 263. Regarding typicality, Union alleges that (i) Defendants violated the Exchange Act by making certain false or misleading statements or omissions of material facts concerning Philip Morris; (ii) Union purchased Philip Morris securities at a price artificially inflated by those false or misleading statements or omissions; and (iii) Union was damaged upon the disclosure of those misrepresentations. (*See* D.E. No. 7-1 at 6-7). Union's circumstances and legal theory upon which its claims are based appear to be indistinguishable from those of other class members. *See Cendant*, 264 F.3d at 265 (citing *Hassine*, 846 F.2d at 177) (alterations in original). (*Compare*

*generally* D.E. No. 7-1, *with* D.E. No. 1). Union satisfies the typicality requirement of Federal Rule of Civil Procedure 23(a)(3).

Union no doubt also satisfies the adequacy requirement of Federal Rule of Civil Procedure 23(a)(4). Union is a large, established institutional investor that manages approximately $400 billion in assets. (D.E. No. 7-1 at 4). As such, it is the paradigm of a prospective lead plaintiff as envisioned by the PSLRA. *See Cendant*, 264 F.3d at 261-62. Union possesses significant experience serving as a class representative in other securities class actions, and is equipped with an in-house legal team to direct the efforts of its litigation counsel. (D.E. No. 7-1 at 7-8). As described in more detail below, Union has demonstrated a willingness and ability to select competent class counsel, and to negotiate a reasonable retainer agreement with that counsel. Moreover, the seven-figure loss incurred by Union because of the alleged securities law violations, and the nature of Union's business as an institutional investor, provides an incentive for Union to advocate vigorously for the class's interests and to monitor counsel appropriately. (*See id.* at 4-6). Putative class members have not identified any potential conflict between Union's interests and theirs, and the Court on its own could not identify any reason why Union should not represent the class. (*See generally* D.E. Nos. 5 & 6).

Finally, because no putative class members challenge Union's motion to be appointed lead plaintiff, the Court does not perform a proof-of-inadequacy analysis under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).[1] Union will be the lead plaintiff in this matter.

As noted above, Union in the instant motion simultaneously seeks approval of its choice of lead counsel and liaison counsel—Pomerantz LLP ("Pomerantz") and Lite DePalma Greenberg, LLC ("LDG"), respectively. (D.E. No. 7-1 at 1). The Court finds that each of the

---

[1] The Court notes that appointing Union lead plaintiff will not run afoul of PSLRA's restrictions on professional plaintiffs. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iv); (D.E. No. 7-1 at 8).

7

*Cendant* factors falls in Union's favor. *See* 264 F.3d at 276. Therefore, the Court will approve Union's choice of counsel.

Union possesses the legal experience and sophistication to choose appropriate counsel and monitor counsel's performance. It is a large, established institutional investor that is experienced in securities class action litigation and that has its own in-house legal team. (D.E. No. 7-1 at 4-5 & 7-8). Although it did not specify the number of firms considered, Union described its process of selecting law firms for this type of matter in a level of detail adequate for this Court to conclude that Union's choice of counsel resulted from independent decision making. *See In re Nice Sys.*, 188 F.R.D. at 223. Regarding chosen counsel's qualifications, Pomerantz specializes in securities class action litigation and maintains a successful practice in that area. (*See* D.E. No. 7, Ex. E at 1-5). Indeed, Pomerantz has served as lead counsel in numerous securities class actions and is qualified to serve as lead counsel in this matter. (*See id.*). Similarly, LDG is experienced in class action litigation, is a frequent litigator in this District, and is otherwise qualified to serve as liaison counsel. (*See generally* D.E. No. 7, Ex. F). Regarding the retainer agreement Union submitted for *in camera* review, the Court at this juncture considers the fee arrangement reasonable. The reasonableness of the fee arrangement evidences that the retainer agreement was the product of serious negotiations by Union.

In sum, the Court concludes that Union's choice of counsel resulted from a good faith selection and negotiation process, counsel's retention arose from meaningful arms-length bargaining, and court interference is not necessary to protect the putative class's interests. *See Cendant*, 264 F.3d at 274, 276.

*Conclusion.* For the reasons above, Union's motion is GRANTED. An appropriate Order accompanies this Memorandum Opinion.

*s/Esther Salas*  
**Esther Salas, U.S.D.J.**